UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JODY BROOKS,

    Plaintiff,   Civil Action No.: 13-15082
            Honorable Denise Page Hood
v.          Magistrate Judge Elizabeth A. Stafford

COUNTY OF MACOMB,
CORRECT CARE SOLUTIONS,
and DR. MARCELLA CLARK,

     Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [R. 29, 32]

Jody Brooks, a former Macomb County Jail inmate, brought this action against Defendants Macomb County and Dr. Marcella Clark, alleging violations of her Eighth Amendment right to be free from cruel and unusual punishment. She also alleges that Macomb County violated Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132, based on a failure to provide reasonable accommodation to her, a disabled person. Macomb County and Dr. Clark now move for summary judgment on Brooks's claims. Having reviewed the pleadings and having held a hearing on May 7, 2015, the Court **RECOMMENDS GRANTING** both motions. **[R. 29, 32].**

## I.   BACKGROUND[1]

In September 2012, Brooks began serving a six month sentence in Macomb County Jail.  [R. 29-2, PgID 177].  At the time, Brooks was morbidly obese and suffering from degenerative disc disease, arthritis, and Crohn's disease in remission.  [*Id.*, PgID 177-78; R. 39-17, PgID 981-83, 985-86].  Jail nurse Allison Bayly documented Brooks's conditions and verified her prescriptions with her pharmacy, determining that Brooks had been prescribed Asacol for her Crohn's with a last refill date of 2011.  [R. 29-2, PgID 177-78, 188; R. 29-3, PgID 198-203; R. 34-1, PgID 756].  Bayly also documented that Brooks had prescriptions for Norco and Valium, but she did not attempt to verify their last refill date because jail protocol required new inmates to be weaned from those medications and other narcotic drugs.  [34-1, PgID 756; R. 32-6, PgID 555; R. 29-5, PgID 293-94].

Brooks was placed in the detox unit of the jail for one night.  [R. 34-1, PgID 757, 759].  The following day she was classified as a chronic care patient and transferred to the medical unit for the remainder of her stay due

---

[1] The background comes mainly from the parties' deposition transcripts and medical documentation.  Brooks also filed an affidavit with her responsive brief in an attempt to negate some of Defendants' arguments, [R. 39-10], but the Court will not consider any portions of it that contradict her deposition testimony.  "A party may not create a factual dispute by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 452, 460 (6th Cir. 1986).

to her need for a "CPAP" machine for sleep apnea.  [*Id.*, PgID 757, 771].

Brooks was given a prescription for several medications at this time, but not

for Asacol, Norco, Valium, or any alternative pain medication.  [*Id.*].

Brooks took a shower on her first day in the medical unit, but her

arthritis made it difficult to walk to the showers since they were located in a

different unit.  [R. 29-2, PgID 183].  The shower had no handle for support,

so she requested a shower seat, but the only one available had a broken

leg.  [*Id.*].  Brooks limited her shower to five minutes due to pain and

returned to her cell.  [*Id.* at 190].  After she complained about "difficulty"

showering, she was provided a wash tub for sponge baths, which she took

for the remainder of her sentence.  [*Id.*, PgID 183].  She does not allege

and the record does not show that she ever again complained about her

provisions for washing.

Brooks also complained that her toilet was too low and lacked

handrails, making it difficult for her to get off.  [*Id.*, PgID 181-83].  She

testified that other prisoners and nursing staff helped her.  [*Id.*, PgID 189].

She was then given a raised toilet seat to place over the toilet, but it

cracked under her weight and began pinching her in the back of the leg,

sometimes drawing blood.  [*Id.*, PgID 196].  She did not complain to staff

out of fear that the seat would be taken away if she did.  [*Id.*, PgID 196-97].

3

Brooks additionally claims that she had trouble using the toilet because her cell did not have a privacy screen, allowing male inmates who were passing by her cell to see her. [R. 29-2, PgID 181]. She testified that she complained and was told that the privacy screens were on order, but none arrived during her stay. [*Id.*, PgID 193]. Due to the lack of privacy, Brooks ceased taking a medication that caused her to urinate more frequently. [*Id.*, PgID 181, 193]. A note that Dr. Clark wrote after an October 2, 2012 initial chronic care visit corroborates that this, but Clark additionally indicated that the privacy issue had been "resolved with covering of door window." [R. 34-1, PgID 743]. There is no supporting evidence that Brooks complained about the lack of a window covering after that visit.

The October 2, 2012 visit marked the first time that Dr. Clark had seen Brooks. [R. 34-1, PgID 742-43]. The record does not indicate that this visit was prompted by a request from Brooks for treatment of any of her conditions. Brooks told Dr. Clark that she had been diagnosed with Crohn's disease in 2005 and had taken Asacol, but it was not among her current medications. [*Id.*]. Brooks claims that she told Dr. Clark that she was not currently taking Asacol because she was in remission. [R. 39-10, PgID 935].

4

During the October 2012 visit, Brooks complained of back and neck pain and requested a second mattress, but Dr. Clark found that to be not medically indicated. [*Id.;* R. 29-2, PgID 179, 183]. Dr. Clark testified that she believed a second mattress was unnecessary because Brooks was ambulatory with a cane, was not in any acute distress, was able to get on and off the exam table without difficulty and was able to perform the recommended exercises. [R. 29-5, PgID 292]. Dr. Clark's notes indicate that Brooks's extremities were within normal limits and with no neurological deficits, that she ambulated with a cane, that her degree of control was "good," and that the recommended course of action was back and neck exercises, weight loss and an NSAID that was available at the commissary. [R. 34-1, PgID 742-43].

Brooks denies that her back was examined. [R. 39-10, PgID 935]. Additionally, she testified that Dr. Clark told her the reason she was not getting a second mattress was because she was in "J-A-I-L," which Clark denies. [R. 29-2, PgID 191; R. 29-5, PgID 300]. Brooks alleges that she later requested a second mattress from a corrections officer, but was informed that she would have to "ask healthcare." [R. 29-2, PgID 191]. It does not appear that she asked Dr. Clark or anyone in healthcare for a second mattress after the October 2012 examination, and she admitted

5

that she was capable of getting in and out of bed without assistance. [*Id.*, PgID 189].

In her January 26, 2015 affidavit, Brooks alleged that she told Dr. Clark at her October 2012 visit that she received injections and physical therapy for her pain management, but that information is not documented in the exam notes. [R. 39-10, PgID 934; R. 34-1, PgID 742-43]. The only documentation in the medical records that she suffered pain thereafter pertained to Brooks's refusal to take her medications on three occasions because she did not want to get out of bed, explaining once that she "hurt too much to get up." [R. 34-1, PgID 752]. However, the source of her pain on that occasion is not clear, and the record does not demonstrate that she requested any injections, physical therapy or other pain management.

Brooks testified that she began suffering a flare-up of her Crohn's disease in mid-October 2012, the symptoms of which included rectal bleeding. [R. 29-2, PgID 183]. However, there is no medical documentation of this flare-up until November 2, 2012, when nursing staff informed Dr. Clark, who promptly wrote a prescription for Azulfidine, a Crohn's medication. [R. 34-1, PgID 773]. Brooks refused the Azulfidine, stating that it had not worked for her previously and caused side effects. [R. 29-2, PgID 180; R. 29-5, PgID 327-28; R. 34-1, PgID 773, 750, 760].

6

During this time, Brooks told the nurses that she needed a diet of fresh fruits vegetables, and no processed foods.  [R. 34-1, PgID 775].  Brooks testified that she had informed Dr. Clark of the need for this diet at the October 2 appointment, but Dr. Clark's only diet-related note from that visit was that Brooks's doctor had told her to eat a banana a day for potassium. [R. 29-2, PgID 178; R. 34-1, PgID 742-43].

On November 9, 2012, Brooks notified nursing staff of continued rectal bleeding.  [R. 34-1, PgID 760; 775].  Dr. Clark saw Brooks the same day.  Her notes state that Brooks reported having rectal bleeding only for the past week and that she had been refusing Azulfidine.  [R. 34-1, PgID 772].  Dr. Clark offered to perform a rectal exam, but Brooks refused, allegedly because she did not trust Dr. Clark.  [R. 34-1, PgID 772; R. 39-10, PgID 935].  Dr. Clark discontinued Azulfidine and prescribed another medication, Pentasa.  [R. 34-1, PgID 772].

Brooks refused to take the Pentasa, informing nursing staff that it was ineffective, too.  [R. 29-2, PgID 180; R. 29-5, PgID 327-28; R. 29-6, PgID 336-37, 354; R. 34-1, PgID 745-50, 759].  She reported continued bleeding to nursing staff on November 12, 2012, although the note states she was not bleeding that day.  [R. 29-6, PgID 334; R. 34-1, PgID 774].  On November 17, 2012, a nurse observed bright red blood on toilet paper and

7

in the toilet.  [R. 32-7, PgID 588].  Blood was observed in the toilet again on

November 20, 2012.  [R. 29-6, PgID 337; R. 32-7, PgID 589; R. 34-1, PgID

774].  On that same day, Dr. Clark woke a sleeping Brooks in her cell, and

they agreed to begin a trial of Prednisone, a steroid.  [R. 29-2, PgID 180-

81; R. 29-6, PgID 339-40; R. 34-1, PgID 762, 764, 770, 772].  Brooks

continued to refuse the Pentasa after being prescribed Prednisone, and Dr.

Clark discontinued the Pentasa prescription on November 26, 2012.  [R.

34-1, PgID 745-50, 759, 766-67].  Brooks's bleeding resolved on January

9, 2013.  [R. 29-2, PgID 195; R. 29-6, PgID 351].

When Dr. Clark visited Brooks in her cell on November 20, she also

discussed Brooks signing a release to obtain her outside medical records.

[R. 34-1, PgID 772].  Brooks refused to sign the release because she did

not want her doctors to know she was in jail.  [R. 29-2, PgID 180; R. 29-6,

PgID 352-53; R. 34-1, PgID 745].  Brooks testified she had offered to have

her family obtain the records, but there is no evidence the records were

ever obtained.  [R. 29-2, PgID 195].

During this same period, on November 16, 2012, jail administrator

Michelle Sanborn received a letter from Brooks's criminal attorney, also

signed by Brooks, requesting that she be furloughed from jail due to

deteriorating health.  [R. 29-13].  Counsel stated that "Brooks has been

diagnosed with Crohn's disease as well as degenerative disc disease. Because of the highly processed nature of the jail food, Ms. Brooks is now experiencing severe and significant internal bleeding which has gone untreated by jail staff."  [*Id.*].  He went on to state that "Ms. Brooks' degenerative disk disease has created a situation where she is unable adequately [to] access the toilet, as same is not equipped at a suitable height to accommodate her disability."  [*Id.*].

On November 26, 2012, Ms. Sanborn discussed the letter with Director of Nursing Karen Black (nee Creagh), and they decided that Brooks needed to be offered a medical diet in writing since there was no record of any previous offer.  [*Id.*; R. 29-11, PgID 432; R. 32-7, PgID 592]. Dr. Clark was notified that Brooks's requested diet of fresh fruits and vegetables could not be accommodated by the jail.  [R. 29-6, PgID 343; R. 32-7, PgID 589; R. 40-3, PgID 1012].  The following day, Dr. Clark ordered a "low-residue low-fiber diet" that she believed was compatible with Crohn's disease and that the jail could supply.  [R. 29-4, PgID 227-28; R. 29-6, PgID 355-57, 375; R. 34-1, PgID 773].

Records show that Brooks refused this diet on November 27 and 28, 2012, because it was "less appealing than reg[ular] diet."  [R. 32-7, PgID 591; R. 34-1, PgID 745].  Brooks does not recall signing these refusals, but

9

does acknowledge refusing the diet.  [R. 29-2, PgID 178-79].  She was then defaulted back to the regular prison diet.  [R. 34-1, PgID 776].  She made no further diet requests.

During her incarceration, Brooks was confined to her cell twenty-three hours a day, and permitted only one hour out of her cell for recreation, and was occasionally refused even that one hour of recreation.  [R. 29-2, PgID 183].  Jail staff testified that medical unit inmates are confined to their cells twenty-three hours a day due to safety concerns; inmates of various security classifications are housed in and pass through the unit to receive medical care.  [R. 29-9, PgID 399-400; R. 29-10, PgID 407; 29-11, PgID 422; R. 32-7, PgID 581].  Jail administrator Sanborn testified that medical unit inmates are to be provided at least one hour of recreation time.  She would have taken action if she had been informed of an inmate being confined for a twenty-four-hour period.  [R. 29-11, PgID 424].  There is no record of Brooks ever complaining to jail staff of her occasional twenty-four-hour periods of confinement.

Brooks also alleges that her cell was consistently so cold that she could see her breath.  [R. 29-2, PgID 192].  However, there are no documents showing she ever raised this issue with prison staff, and no prison staff testified to the level of cold to which Brooks alleges she was

10

subjected.  [R. 29-4, PgID 260-61; R. 29-6, PgID 363-64; R. 29-11, PgID
422].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall
grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a).  *See also* *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of
Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  The party
seeking summary judgment bears the initial burden of informing the Court
of the basis for its motion, and must identify particular portions of the record
that demonstrate the absence of a genuine dispute as to any material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v.
CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  A fact is material if it could
affect the outcome of the case based on the governing substantive law.
*Liberty Lobby*, 477 U.S. at 248.  A dispute about a material fact is genuine
where "the evidence is such that a reasonable jury could return a verdict for
the nonmoving party." *Id.*

If the movant satisfies its burden, the burden shifts to the non-moving
party to go beyond the pleadings and set forth specific facts showing a

genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).  The opposing party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The Court need only

consider the cited materials, but it may consider other evidence in the record.  Fed. R. Civ. P. 56(c)(3).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

With these standards in mind, the Court finds that Defendants have demonstrated that no genuine issues of fact exist in this case and that their motions for summary judgment should be granted.

## III.    ANALYSIS

### A.    Dr. Clark

Brooks alleges that Dr. Clark was deliberately indifferent to her serious medical needs by removing her from narcotic pain medication without offering a suitable alternative, denying her an additional mattress for pain, and failing to prescribe the appropriate medicine and diet for her Crohn's disease.

"'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The standard for

13

deliberate indifference "has both an objective and a subjective component." *Perez v. Oakland Cnty.,* 466 F.3d 416, 423 (6th Cir. 2006) *citing Comstock,* 273 F.3d at 702.

In order to proceed on a claim of deliberate indifference in the face of a summary judgment motion, Brooks must offer enough evidence to create a genuine issue of material fact as to both prongs. With regard to the objective prong, Brooks must offer evidence showing that she suffered from a "sufficiently serious" medical condition. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) *citing Wilson v. Seiter,* 501 U.S. 294, 298 (1991) . With regard to the subjective prong, Brooks must offer evidence that Dr. Clark "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer,* 511 U.S. at 837.

In evaluating a claim of deliberate indifference, federal courts "'distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where medical treatment was provided, and a prisoner claims

14

that it was inadequate, "courts are generally reluctant to second guess medical judgments." *Id.* (citation omitted).  It is possible, however, for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.* (citation omitted).

The Court finds Brooks has not offered evidence that would create a genuine issue of fact here.

### 1.   *Back Pain Relief*

Brooks alleges that Dr. Clark's withdrawal of all narcotic pain medication and refusal to approve a second mattress to alleviate her back pain constituted deliberate indifference.  However, Dr. Clark did provide medical recommendations to Brooks to address her back pain that were not woefully insufficient.  Dr. Clark recommended that Brooks treat her back pain with a NSAID, and Brooks's dissatisfaction with that over-the-counter pain medication does not implicate the Eighth Amendment. *Moses v. Coble*, 23 Fed. Appx. 391, 392 (6th Cir. 2001).  Further, Brooks alleges that she needed a second mattress, but Dr. Clark found it be not medically necessary.  "[S]uch disagreement alone does not establish deliberate indifference." *Cox v. Jackson*, 579 F. Supp. 2d 831, 855 (E.D. Mich. 2008).

Moreover, Brooks's lack of communication to Dr. Clark that she was in pain after Dr. Clark recommended an over-the-counter NSAID is fatal to

15

her claim. *Rouster v. County of Saginaw*, 749 F.3d 437, 449 (6th Cir. 2014) (deliberate indifference requires evidence that physician witness or be informed of the inmates distress). There is no evidence that Dr. Clark witnessed or was informed that Brooks was suffering continued back pain due to the change in her medications or inadequate mattress. Brooks knew how to summon Dr. Clark for medical care; she made a sick-call request to see Dr. Clark that pertained to her Crohn's disease. [R. 32-2, PgID 490]. Yet, she did not request to see Dr. Clark to address her alleged continued back pain. Under these facts, the Court finds that Dr. Clark was not deliberately indifferent to Brooks's back pain.

### 2. *Crohn's Treatment*

Similarly, the Court finds Dr. Clark was not deliberately indifferent with regard to her treatment of Brooks's Crohn's disease. Brooks alleges that Dr. Clark was deliberately indifferent in failing to prescribing Asacol, the medication Brooks took prior to her incarceration. However, the Eighth Amendment does not entitle an inmate "to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Dr. Clark prescribed Brooks Azulfidine, Pentasa and Prednisone, and a low fiber, low residue diet in order to treat her Crohn's disease, and the Court is not permitted to second-guess Dr. Clark's medical judgment. *Alspaugh*, 643 F.3d at 169.

16

That is especially true in this case because Brooks refused to release her medical records to Dr. Clark so that her alleged poor reactions to Azulfidine and Pentasa[2] could be confirmed.

With regard to Brooks's complaint that she did not receive the fresh fruits and vegetable diet that she requested, her own treating physician testified that the low-fiber, low-residue diet Dr. Clark prescribed is recommended for Crohn's patients.  [R. 32-4, PgID 530].   The Court finds that Dr. Clark's actions with regard to Brooks's Crohn's disease do not constitute deliberate indifference to a serious medical need and she is therefore entitled to summary judgment.

## B.    Macomb County

### 1.    Deliberate Indifference

Municipalities like Macomb County are considered "persons" who may be sued under § 1983.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978).  However, Macomb County may not be sued for injuries that were caused solely by its employees or agents. "Instead, it is when execution of a government's policy or custom, whether

---

[2] Incidentally, as pointed out during the hearing, Asacol and Pentasa are both brand names of the generic mesalamine.  *See* http://www.medicinenet.com/mesalamine/article.htm.  So, when Dr. Clark prescribed Pentasa, Brooks was essentially receiving the drug that she requested.

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.  Of further import, Macomb County may not be held liable unless Brooks suffered a constitutional harm at the hands of its agents or employees. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Therefore, Brooks must provide evidence that  an agent or employee of Macomb County "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837.

Brooks alleges that Macomb County's had policies to refrain from treating prisoners with chronic pain conditions; to provide inadequate mattresses coupled with low-set steel bed frames; to provide toilet seats that were too low and lacked handrails; and to provide an inadequate diet for prisoners with serious gastrointestinal issues.  [R. 39, PgID 823-24]. However, she does not establish that a jail official knew of or disregarded an excessive risk to her health or safety.

As set forth above, the Court has determined that Dr. Clark was not deliberately indifferent with respect to the treatment of Brooks's back pain,

18

Crohn's disease, or the allegedly inadequate mattress, and Brooks has not

identified any other jail official who knowingly disregarded an excessive risk

to her health or safety pertaining to these alleged inadequacies. The same

is true with respect to the low-set bed and toilet seats. Brooks never

complained about the height of the bed and her need for one was not

obvious such that the County would have otherwise been on notice.[3]

Moreover, she was given a raised toilet seat and did not notify anyone

when it cracked. Brooks has not shown that any jail officials or agents

were deliberately indifferent to her health and safety, so Macomb County

cannot be held liable. *Heller*, 475 U.S. at 796.

### 2.    *Conditions of Confinement*

Brooks further claims that the Macomb County Jail's conditions of

confinement, including the lack of privacy for medical unit inmates, the

confinement of such inmates to their cells twenty-three hours a day, the

provision of sponge baths instead of showers, and the temperature of the

cells, amounted to cruel and unusual punishment.

A claim that conditions of confinement violate the Eighth Amendment

---

[3] Although Brooks's affidavit states that she informed Dr. Clark that she
needed a second mattress due to the height of the bed, [R. 39-10, PgID
934], this contradicts her deposition testimony that the reason for her
request was due to the pain she felt lying down, [R. 29-2, PgID 179, 183],
and thus this averment is not considered as evidence here.

19

must demonstrate both that the deprivation was "sufficiently serious," resulting in a "denial of the minimal civilized measures of life's necessities," and that the prison official(s) responsible possessed a "state of mind . . . of deliberate indifference to inmate health or safety." *Spencer v. Bouchard,* 449 F.3d 721, 727-28 (6th Cir. 2006) (internal quotations and citations omitted). Because Brooks seeks to recover under a theory of municipal liability, she must also show that a municipal policy or custom was the "moving force" behind any constitutional deprivation. *Monell,* 436 U.S. at 694.

Brooks's claims of unconstitutional conditions fail because, even if any of the alleged conditions existed, Brooks has failed to submit evidence showing a culpable state of mind on the part of Macomb County or the existence of a municipal policy or custom that was the "moving force" behind these conditions.

A cold cell may rise to an unconstitutional level under some circumstances. *Wilson,* 501 U.S. at 304-305. However, Brooks never made any formal complaints and never requested extra clothing or blankets, and whatever coldness she experienced was not obvious to jail staff, who denied experiencing cold temperatures. [R. 29-4, PgID 260-61; 29-11, PgID 422; 32-6, PgID 556; 32-7, PgID 580].

20

With respect to cell privacy, Brooks admits that it was jail policy to provide privacy screens for medical unit cells.  Administrator Sanford confirmed this policy, as well as a requirement to keep general population inmates from being in view of those cells in the first instance.  [R. 29-11, PgID 427].  Thus, any failure to provide Brooks with a screen did not result from a municipal policy or practice, and Macomb County cannot be held liable.

Additionally, Brooks did not complain about the broken shower chair, the broken toilet seat or the inadequacy of the wash basin and sponge, and she does not claim she later requested and was denied access to the shower or a different accommodation than the wash basin.  *C.f. Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1283-84 (6th Cir. 1990) (finding Eighth Amendment violation where prisoner was denied access to shower *and* wash basin for 40 days).  Furthermore, jail officials testified that the jail had the ability to order any medical equipment a prisoner needed, including raised toilet seats, when they were aware of such needs.  [R. 29-11, PgID 414; 32-7, PgID 594]; *c.f. Lee v. Sherrer*, No. 06-2716, 2009 U.S. Dist. LEXIS 26904, at *22-24, 2009 WL 901777 (D.N.J. Mar. 31, 2009) (denying summary judgment where plaintiff adduced evidence that defendants were on notice of broken shower seat and no replacement provided).

21

Finally, Brooks's claim regarding the daily duration of her confinement in her cell was unconstitutional is without merit.  It is true that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees."  *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995).  *Rodgers* did not establish a bright-line rule, but cited as an example a policy established in *Spain v. Procunier*, 600 F.2d 189 (9th Cir.1979), to require an hour of exercise per day, five times a week, for inmates who were otherwise confined to their cells for the entire day.  *Rodgers*, 43 F.3d. at 1087.  Brooks's alleges to have been denied her one hour of out-of-cell time only seven times during her entire six-month sentence, [R. 39, PgID 800 n. 7], which means that she received more recreation time that the policy established in *Spain*.

Furthermore, the policy is not due to deliberate indifference, but to security considerations that arise because of the mix of inmates that flow through the medical unit.  [R. 29-9, PgID 400; R. 29-11, PgID 423].  Thus, Macomb County has set forth a penological justification for its policy of keeping medical unit inmates confined for twenty-three hours per day.  Moreover, the evidence does not show that the County knew Brooks was occasionally confined the whole day, so that anomaly was not the result of a municipal policy or custom.

22

Ultimately, the Court finds no genuine issue of material fact on any of Brooks's Eighth Amendment claims against Macomb County and summary judgment should be rendered in the County's favor.

### 3.    ADA Compliance

Finally, Brooks alleges that the height of the jail's bed and toilet, and the lack of an accessible shower violated Title II of the ADA.  She alleges that no accommodations were made in relation to the bed, and those made with respect to the toilet and shower were unreasonable.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The protections of the ADA extend to inmates housed in county jails. 42 U.S.C. §12131; *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206 (1998).  The regulations implementing Title II further state that the public entity must have knowledge of the plaintiff's disability, and thus the need for an accommodation. 28 C.F.R. § 35-130(g) ("public entity shall not exclude or otherwise deny  . . . because of the *known* disability of an individual with whom the individual or entity is known to have a relationship or association.") (emphasis added).  *See also Robertson v. Las Animas*

23

*County Sheriff's Dep't*, 500 F.3d 1185, 1196-97 (10th Cir. 2007) (holding that under Title II public entity must have knowledge of both disability and need for accommodation, either by plaintiff or because disability is obvious).

Here, assuming that Brooks had a disability as defined by the ADA, she never complained about the height of the bed or requested an accommodation, and her need for one was not obvious such that the County would have otherwise been on notice. Brooks never complained that the raised toilet seat was not a reasonable accommodation, and she did not report that it had cracked. Nor did she request a new shower seat, and there is no evidence that she complained that the wash basin was inadequate.

Brooks's failure to seek accommodations or inform jail personnel that the accommodations provided were unreasonable vitiates her ADA claims, and Macomb County's motion for summary judgment of Brooks's ADA claims should be granted.

## IV.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Defendants Marcia Clark and Macomb County's motions for summary

judgment **[R. 29, 32]** be **GRANTED**.


Dated: May 28, 2015                           s/Elizabeth A. Stafford
Detroit, Michigan                              ELIZABETH A. STAFFORD
                                               United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.

Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers

Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 28, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager